IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| **I.** | : |
| **DAVID VEGA MOLINA** | :         **99-295(DRD)** |

MOTION FOR DISCOVERY
PURSUANT TO RULE 16(a), F.R.Cr.P.
AND BRADY v. MARYLAND, 373 U.S. 83 (1963), and
GIGLIO V. UNITED STATES, 405 U.S. 150 (1972)

DAVID VEGA MOLINA, by his undersigned counsel, hereby moves, pursuant to Rule 16(a), F.R.Cr.P. and Brady v. Maryland, and its progeny, for discovery of the information and materials described herein on the grounds and for the reasons stated as follows:

I. STATUS OF DISCOVERY AND REQUESTS

1. The defense and the prosecution have exchanged correspondence over a period of months in an attempt to ensure that the undersigned has obtained all the discovery provided in the first trial of this indictment.

On March 2, 2006, the defense and the prosecution met to discuss Defendant's detailed discovery requests, previously submitted in writing, based upon counsel's study of the discovery provided and her assessment of the case. At that time, the two attorneys had a telephone conference

with the case agent, and agreed that certain issues relating to the availability of information requested, would need to be investigated.

At this point, the prosecution appears to have turned over the evidence disclosed during the first trial, and to be making good faith efforts to locate and/or determine the existence of additional evidence requested by undersigned counsel. This motion is being filed at this time to make a record of the requests that remain outstanding, unresolved, and warranting this Court's attention, and to obtain its ruling with regard to these items.

3. ITEMS REQUESTED PURSUANT TO RULE 16(a)(1)(A) and (B)

(A) Defendant understands the prosecution to represent that defendant has made no verbal or written statement that implicates him in this offense. In reliance upon that representation, no request is pending.

(B) Defendant understands the prosecution to represent that any relevant oral or written statements by codefendants are reflected in FBI Form 302 reports that have been turned over. In reliance upon that representation, the only request that remains pending are for close to half of the one-hundred separate 302 reports made of interviews of John Zúñiga Bruno, over which 53 have been turned over. The request for the remaining reports remains pending.

(C) Pursuant to both Rule 16 and <u>Brady v. Maryland</u>, Mr. Vega requests any and all oral and written statements, including any and all documentation reflecting the failure of any witness to identify David Vega Molina as a participant in the acts alleged in the indictment.

In connection with this request, it is requested that the prosecution be ordered to produce the rough notes of any interview of any witness, including, but not limited to codefendants, to the Court for

its review to determine if what, if any attempts were made to identify David Vega Molina and/or any participant in the holding for ransom and murder of Guillermo Muñóz. This includes, but is not limited to the rough notes related to the arrest of Victor Villegas and his statement and any and all preparations or attempts to interview Michelle Rodríguez at the time of her arrest.

In connection with this request in relation to Mr. Villegas, counsel has one FBI 302 dated 9/24/99 which includes a summary of Mr. Villegas' interview. She hereby asks the Court to review the rough notes of TFA Angel L. Negrón and FBI Agent Eric López regarding their arrest and interview of Mr. Villegas, and any and all logs reflecting their interactions with him to the time the interview was concluded. It is counsel's contention that the FBI may have shown Villegas a photograph of Mr. Vega, and that he denied Mr. Vega was the hispanic male he identified as participating in the murder. The words "thin hispanic male" are clearly not those used by Mr. Villegas, and that review of the rough notes may produce additional information inconsistent with Mr. Vega.

During the discovery conference, the prosecutor represented that no effort was made to show Mr. Villegas a photograph because the interview was conducted by FBI Agent Edwin López, who was newly assigned to the case and not prepared with photographs, etc.. It is counsel's recollection that a statement to this effect may have been made by Agent López, at an earlier status conference with the Court. However, careful review of the pleadings from the prior case, including the "United States Reply to Second Motion for Severance Based on Different Grounds" (part of "Omnibus Reply to Several Motions by Defendant Michelle Rodriguez Matos", filed on June 28, 2002) reveals that TFA Negrón did have a photograph of Zúñiga's residence which he showed to Mr. Villegas for the purpose of identification. It is therefore (a) unlikely that the reason he did not show him a photograph of Mr.

Vega is lack of preparation, and (b) possible that the agents have forgotten, due to the passage of time, what efforts they may have taken to secure an identification, especially since it proved fruitless in the case of Mr. Vega. Counsel also notes that when Michelle Rodríguez was first questioned, some months earlier, she was shown one or more photographs of Mr. Vega and asked to identify them.

(D)  Pursuant to both Rule 16 and Brady v. Maryland, Mr. Vega requests any and all oral and written statements of Michelle Rodríguez other than those reflected in the FBI 302s of October 25, 2006 and April 27, 1998.

4.    ITEMS REQUESTED PURSUANT TO RULE 16(a)(1)(D) and/or Brady/Giglio

Current criminal records, to include the time between that reflected in the prior discovery and the present, of all witnesses, including former codefendants and cooperating witnesses, including the Evelyn Rodríguez, her sister Jessica, and Michelle Rodríguez as of the present. The records I have, with the exception of Michelle Rodríguez, all date from prior to the last trial.

5.  ITEMS REQUESTED PURSUANT TO RULE 16(a)(1)(E) or (F) and/or Brady/Giglio

(A) Any document or object belonging or pertaining to Defendant obtained or seized from defendant by means of any process, regardless of whether they are intended to be introduced at trial by the prosecution, together with a single designation of evidence for this trial. Counsel has received seriatim designations from the prior trial.

This request is made pursuant to Rule 12(B) as well as Rule 16. It is defendant's contention that without such designation, defendant cannot file any required motions to suppress, *in limine*, pursuant to 403/404(b), or for any other legitimate purpose, which must be filed prior to trial, or, in the interests of judicial economy and justice, should be determined prior to trial.

(B) Because defendant maintains that examination of the car recovered in Fajardo will yield exculpatory evidence in that it will help to show he had no contact with it at any time, he requests that the Toyota Corolla and any items found in it be compared with his physical/biological characteristics if no comparison has been made and the results provided prior to trial.

(C) **Any biological evidence**, including fingerprints, palmprints, blood, saliva or hair, and the reports and data regarding the results of any tests performed thereupon. The relevant items that were seized and either tested or available for testing are detailed as follows, based upon the discovery provided to date.

**Fingerprints**

In addition to the provisions of Rule 16, Mr. Vega contends that the absence of his fingerprints is exculpatory evidence which must be provided pursuant to Brady v. Maryland. Based upon the information provided to counsel from the previous trial, the following appears relevant:

Any and all comparison of Mr. Vega's fingerprints (including major case prints) with any of the 22 latent fingerprint lifts taken from the 1995 Toyota Corolla and/or any of the other items retrieved from that car. According to **Airtel of 4/24/95**, items identified therein as numbers 114-119, 121-124, 125, 126, 126 A-D and 127 and 142 were examined for fingerprints.

Counsel requests comparison of those items with all prints available from Mr. Vega if this has not been done, and all requests of any such comparisons.

It appears that comparison was made of Mr. Vega's fingerprints with 42 latent prints and one latent impression, and with three unidentified latent fingerprints and one latent impression that awaited his major case prints. See Reports of Louis Gale Hupp of May 20, 1998 and November 18, 1999.

However, from the discovery provided, it has not been possible to determine the source of the prints (i.e., on what items in what locations). It is requested that the prosecution be ordered to identify the physical items from which all prints which were compared to those of Defendant were compared and no match was found.

### DNA Testing Request

According to an **Airtel of 2/23/95**, items identified therein as numbers 73-87, 89, 95, 97, 100, 103, 109-112 were all examined for presence of hair, fibre and debris. Defendant requests that the prosecution be ordered to disclose whether any hair or biological evidence, other than hair belonging to Alberto Muñoz, was found on any of these items, and, if so, whether any determination has been made as to whom the hair belongs, and if not, whether any attempts to do so were made.

According to **Airtel of 4/24/95**, items identified therein as numbers 114-127 (including 126A-D), 134(A-E, H and I), 139 and 142 were examined for hairs, fibres and debris. Defendant requests that the prosecution be ordered to disclose whether any hair, other than hair or biological evidence belonging to Alberto Muñoz, was found on any of these items, and, if so, whether any determination has been made as to whom it belongs, and if not, whether any attempts to do so were made.

According to **Airtel of 2/23/95**, items identified therein as 77-79, 90, 92, 96, 99, 101-109, 112 and 113 were submitted for blood grouping and comparison with that of Mr. Muñoz (Item 111). It is requested that the prosecution be ordered to disclose whether any blood, other than blood belonging to Alberto Muñoz, was found on any of these items, and, if so, whether any determination has been made as to whom the blood belongs, and, if not, whether DNA testing of the blood has been performed.

In relation to the same **Airtel of 2/23/95**, Items 72, 88 and 91 were submitted for determination of the presence of saliva and comparison with that of Mr. Muñoz. These items appear to have been taken from the location where his body was found. It is requested that the prosecution be ordered to disclose whether any saliva other than that belonging to Alberto Muñoz, was found on any of these items, and, if so, whether any determination has been made as to whom it belongs. It is also requested that such an order be made extensive to items #70, 98, 99, which may have contained saliva, and that the prosecution be ordered to disclose whether DNA testing has been performed on any biological evidence found on these items.

According to **Airtel of 4/24/95**, items identified therein as 114, 115, 118-121, 123 and 142. were submitted for blood grouping and comparison with that of Mr. Muñoz. It is requested that the prosecution be ordered to disclose whether any saliva other than that belonging to Mr. Muñoz was found on any of these items, and, if so, whether any determination has been made as to whom it belongs.

In this connection, Defendant has requests that as to any biological sample obtained that is not that of Mr. Muñoz, it be submitted for DNA analysis, and a comparison be made with his DNA. This issue has been discussed between counsel, and there appears to be agreement that while this case does not fit precisely within the literal parameters of 18 U.S.C. Section 3600, the prosecution has indicated, at least tentatively, that it has no objection to such a request. Defendant therefore requests that:

(i) a sample of his DNA be collected and compared with any and all physical evidence recovered in this case susceptible of providing DNA (including hair, saliva, blood), including but not limited to the car, all items recovered at the scene in Fajardo and from any other place where it is

believed that the persons responsible for holding Guillermo Muñoz hostage and killing him may have been during the period from his kidnapping until his death (other than samples it has been concluded contain only his DNA), under the following conditions:

    (a) that all raw data and records of all tests be preserved, and

    (b) that sufficient quantities of all material tested be preserved in order to permit retesting by an independent source in the unlikely event of doubtful results;

If it is the prosecution's position that, with respect to any category of physical evidence, there is none that pertains to Mr. Vega, it is respectfully requested that the Court order the prosecution to certify that it has so determined, after diligent search, and to preclude the presentation of any such evidence not produced within twenty-one days of this Court's Order on this request.

    (D) BALLISTICS AND OTHER EXPERT REPORTS

Defendant requests disclosure of any and all reports of tests made to determine the weapon that fired items identified with numbers 101, 102 and 113 in Airtel of 2/23/95, Numbers 114-119, 121-124, 126, 126A, 126 C-D in **Airtel dated 4/24/95** and

of any tests or comparisons made in relation to bullets and/or fragments retrieved from the body of Guillermo Muñoz.

    (E) Any document or object within the prosecution's possession, custody, or control which is **material to the preparation of the defense**.

This includes, but is not limited to any and all documents related to the former codefendant **Michelle Rodríguez,** that may establish her motive for falsely implicating Mr. Vega, and her lack of veracity and/or reliability as a witness including, but not limited to:

(i) any and all portions of the Presentence Investigation Report relevant to her credibility and/or motive to incriminate Mr. Vega Molina, including but not limited to information concerning her depression, suicide attempts, mental status or condition, drug use or dependence, and/or medications that could have any bearing on her credibility;

(ii) Any statements she made during the Pretrial Services and Presentence investigations denying her involvement in the offense;

(iii) Evidence reflecting any consideration, payment, services or other benefits or privileges afforded to this witness (including any relevant to the location and conditions of her confinement, visiting, telephone and other privileges).

(iv) Any and all evidence reflecting the nature of her relationship with Juan Zúñiga Bruno and/or Evelyn Rodríguez which would tend to show her motive for falsely implicating David Vega in a crime she agreed to carry out with them while involved in a close relationship with them and which at some point prior to trial turned bitter and created animosity between her and Evelyn Rodríguez;

Any and all documents related to co-operating co-defendant **Evelyn Rodriguez** that could be used to show either her lack of credibility and/or motive to testify falsely, including but not limited to copies of:

(i) **all documentary evidence reflecting payments, provision of in-kind services (payment of food, transportation, housing, or provision of same) and other benefits** afforded this witness and members of her family, including Jessica Rivera, and the children of both.

(ii) disclosure of any favors or special privileges afforded to Evelyn Rodríguez after her arrest on the "baby kidnapping" case or while detained at any time (e.g., special calls, visits/visiting conditions).

(iii) Also with regard to Eveyln Rodríquez, copies of her 302s during debriefings following her arrest on the case on which she was initially arrested (related to the New York baby-kidnapping), which lead to her cooperation in this case, any document reflecting any statement made by Ms. Rodríguez implicating Defendant in that case[1], her proffer, plea and cooperation agreements in that case, together with the version of facts, as well as

(iv) a complete and updated criminal record of **Evelyn Rodríguez Santiago** a/k/a/ **Marisa E. Santiago Hernández** or by any other name, and information relevant to her current status (whether she is currently under supervision), and any violations of the terms of her probation or supervised release in either the New York kidnaping case or this one, that could either be relevant to her credibility, either because they reflect a lack of truthfulness and candor, or because they provide a motive to curry the favor of the United States.

(v) any documents disclosing the physical abuse and other reasons which motivated Evelyn Rodríguez to testify against her former husband in order to escape the violence to which she was subjected by Juan Zúñiga Bruno.

ADDITIONAL BOOKS, RECORDS AND DOCUMENTS

(i) Any and all evidence of entries and exits from the Royal Park Industrial Center during the month of January, 1995, including, but not limited to pages from the log book for that entire month.

---

[1] These statements would be exculpatory as to defendant, and are critical to his defense that he is charged in this indictment only because Evelyn Rodríguez and her then-husband Juan Zuñiga Bruno conspired to falsely charge him in these two cases when they were arrested after kidnapping a one-year old baby to hold for ransom in order to get money to satisfy a drug debt.

(ii) For telephone numbers **809-390-1080** and **809-486-341**[2], for the period between January 26, 1995 and February 3, 1995 and up to thirty days thereafter, (a) Names and subscribers of phones that received and made calls to either number; (b) List of all calls made to and from that number; and any and all evidence that tends to show whether David Vega Molina and any of the alleged co-conspirators had any contact, by telephone or otherwise, during the period between January 31 and the day after the police discovered the body of Guillermo Muñoz.

(iii) Evidence produced by the telephone record subpoena for Michelle Rodríguez **787-279-0530**, which was presented to Grand Jury 9/8/99, and any other telephone record subpoenas which may reflect, or be used by the defense to show that no co-conspirator called or was called by David Vega Molina during the period between Mr. Muñóz' kidnapping and the discovery of his body in Fajardo.

(iv) Any telephone records/beeper/cellular or other communications records obtained for any devices the United States has reason to believe were used by Mr.Zuñiga during the period January 1-February 28, 1995, other than those already produced and identified above.

(v) Any physical descriptions, sketches, composite sketches or other images made from witness descriptions of any persons believed to have been involved in the kidnaping, holding for ransom and murder of Guillermo Muñóz. It is defendant's contention that they may help to exclude him as one of those involved.

---

[2] Counsel has received in discovery a print-out reflecting calls between February 2, 1995 at 15:56 and February 10, 1995 at 13:54. Of the 26 outgoing calls listed, no subscriber number or other information is provided as to six.

11

(6) Any other document or object within the prosecution's possession, custody, or control which the prosecution intends to use in its case in chief at trial.

(7) Any and all investigative reports made by the Police of Puerto Rico regarding any aspect of the incidents charged in this indictment in the possession, control or custody of the United States and not already turned over to counsel.

8. ITEMS REQUESTED PURSUANT TO RULE 16(a)(1)(G)

A written summary of any testimony the government intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case in chief at trial, including the witness' opinions, the bases and reasons for those opinions, and the witness' qualifications. To date, the prosecution has indicated that it does not intend to present any expert testimony.

II. MEMORANDUM OF LAW

Each of the requested items has been identified with at least one relevant Rule of Criminal Procedure and/or controlling case from the United States Supreme Court. The requests are specific, and not boiler-plate. In each case, an explanation is given, if it is not obvious from the face of the request, of the relevance of the specific request to the defense. Rather than presume to instruct the Court as to the meaning of Brady, or Giglio, or any other case in the abstract and as a general matter, counsel submits this Motion at this time, and will submit any memoranda of law requested in relation to any specific item which the prosecution contends is either not relevant, not exculpatory, privileged, or exempt from production on some specific legal basis, as opposed to its unavailability or non-existence.

III. GENERAL REQUEST AS TO TIMING OF DISCOVERY

It is respectfully requested that this Court order all discovery to be provided at least thirty days

prior to trial, to permit the defense time to study it, and to conduct any investigation which may be required as a result of the disclosure sufficiently in advance of trial to permit adequate cross-examination of the witness, obtaining expert opinion and/or other preparation of the defense.

It is also requested that the Court exercise its discretion to order all material required to be disclosed pursuant to Giglio and 18 U.S.C. 3500 at least fourteen days prior to trial, in order to permit adequate investigation, preparation and cross-examination. In this case with a mandatory life sentence hanging in the balance, defendant's right to effective assistance of counsel and confrontation should not depend upon things like his counsel's stamina, or her capacity, as a sole practitioner, to absorb discovery in the few hours remaining between the end of one trial day and the start of another. The prosecution will suffer no prejudice from such an order, and the interests of both justice and efficiency will be served.

WHEREFORE, it is respectfully requested that the Discovery requested in Part I of this Motion be GRANTED as requested, upon the schedule requested in Part III hereof.

## CERTIFICATION

I hereby certify that on this date, the foregoing was electronically filed with the Clerk of the Court via CM/eCF system, which will cause a copy to be electronically served upon AUSA Antonio Bazán, for the United States.

    RESPECTFULLY SUBMITTED:

    s/ <u>Linda A. Backiel</u>
      USDC #212110
      Av. E. Pol 497 PMB 597
      San Juan, Puerto Rico
      00926-5639
      Tel y Fax 787-751-4941